UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No.:_____

| | |
|---|---|
| DULY ERNEST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TENET HEALTHCARE CORPORATION | ) |
| d/b/a DELRAY MEDICAL CENTER, | ) |
| | ) |
| Defendant. | ) |

## **COMPLAINT**

Plaintiff, Duly Ernest ("Plaintiff" or "Mr. Ernest") sues defendant Tenet Healthcare Corporation d/b/a Delray Medical Center, ("Defendant" or "Tenet") and alleges:

## **NATURE OF THE CASE**

1.     This is an action for damages, declaratory relief, and injunctive relief arising from Defendants' intentional discrimination, retaliation, and hostile work environment based on race, color, and national origin, in violation of 42 U.S.C. § 1981; interference with and retaliation for the exercise of rights protected by the Family and Medical Leave Act ("FMLA"); whistleblower retaliation in violation of Florida Statute § 448.102; and breach of contract and unpaid wages in violation of Florida Statute § 448.08.

2.     Plaintiff Duly Ernest is a Black, dark-skinned Haitian male who was employed as a Registered Nurse in the Trauma Intensive Care Unit ("Trauma ICU") at Delray Medical Center. Plaintiff consistently met or exceeded performance expectations and had no disciplinary history.

3.      After Plaintiff repeatedly advocated for patient safety, complained of disparate treatment, and submitted a formal Safety Event Report regarding dangerous delays in physician response, Defendants retaliated by immediately removing Plaintiff from the work schedule, subjecting him to an aggressive and intimidating HR interrogation, falsely characterizing his employment as a "voluntary resignation," and denying him earned compensation.

4.      Defendants' actions were intentional, malicious, and taken because of Plaintiff's race, color, and Haitian national origin, as well as in retaliation for his protected whistleblower activity.

## **PARTIES**

5.      Plaintiff DULY ERNEST ("Plaintiff") is a resident of Palm Beach County, Florida and, at all relevant times, was employed by Defendants as a Registered Nurse in the Trauma ICU at Delray Medical Center.

6.      At all times material to this Complaint, the Plaintiff was an "eligible employee" as defined by the FMLA, 29 U.S.C. § 2611(2)(A).

7.      The Plaintiff worked for the Defendant for at least 12 months before the date any FMLA leave was to begin.

8.      The Plaintiff worked for the Defendant for at least 1,250 hours during the 12-month period before the date any FMLA leave was to begin.

9.      Defendant TENET HEALTHCARE CORPORATION d/b/a DELRAY MEDICAL CENTER ("Tenet") is a foreign corporation authorized to do business in Florida and operates Delray Medical Center in Delray Beach, Florida.

10.    At all times material, the Defendant was an "employer" as defined by 29 U.S.C. § 2611(4).

11.    The Defendant was both engaged in commerce or in an industry or activity affecting commerce and employed more than 50 employees for each working day during each of 20 or more calendar weeks in each calendar year relevant hereto.

## JURISDICTION AND VENUE

12.    This is an action for race discrimination under 42 U.S.C. § 1981; to recover damages for retaliation, pursuant to Section 448.102, Florida Statutes; to recover unpaid wages and for breach of contract under Florida common law and Florida Statutes § 448.08.

13.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(3) and (4), 28 U.S.C. § 2617 and 42 U.S.C. § 1981.

14.    This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with their federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

15.    The Defendant is a corporation duly authorized and existing under the laws of the State of Florida and conducting business in Palm Beach County, Florida.

16.    The Plaintiff is a resident of Palm Beach County, Florida, within the jurisdiction of this Honorable Court. The Plaintiff is a covered employee for purposes of the Act.

17.     Tenet Healthcare Corporation d/b/a Delray Medical Center (the "Corporate Defendant") is a corporation having its main place of business in Palm Beach County, Florida, where Plaintiff worked for the Defendant, and at all times material hereto was and is engaged in interstate commerce.

18.     The acts or omissions giving rise to this Complaint occurred in whole or in part in Palm Beach County, Florida.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the unlawful employment practices occurred in Broward and Palm Beach Counties, Florida, within this District.

## FACTUAL ALLEGATIONS

20.     At all times material, Plaintiff Duly Ernest was employed by Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center as a Registered Nurse, initially in a per diem capacity beginning in or about March 2023, and thereafter transitioned to a full-time Trauma ICU Registered Nurse beginning on or about February 29, 2024, until his wrongful termination in or about April 2025.

21.     Throughout his employment, Plaintiff performed his work admirably at all times and was respected and revered by his colleagues with whom he worked.

22.     Plaintiff consistently performed his job duties in a satisfactory manner, met or exceeded expectations, and was never written up, disciplined, or placed on a performance improvement plan prior to his complaints of disparate treatment, retaliation and hostile work environment, and raising concerns regarding patient care.

23.     The Trauma ICU employed approximately forty (40) nurses. Only two to three were Black, and Plaintiff was the only Black Haitian nurse regularly assigned to the night shift.

24.     At all relevant times, Plaintiff's direct supervisor was Nurse Manager of the Trauma ICU Teri Lundgren ("Lundgren"), a White American female, who exercised supervisory authority over Plaintiff and was aware of his protected complaints regarding disparate treatment and patient safety, as well as his medical condition and need for time off.

25.     At all relevant times, Plaintiff's second-level supervisor was Julie Walker ("Walker"), a White American female, who exercised supervisory authority over Plaintiff and was aware of his protected activity and medical condition.

26.     During Plaintiff's employment, an employee from another hospital unit remarked to Plaintiff that "they don't hire Black people in Trauma" and expressed surprise that Plaintiff was working in the Trauma ICU. This statement reflected a racially discriminatory belief regarding staffing in the Trauma unit and reinforced Plaintiff's perception that Black nurses were unwelcome, marginalized, and treated differently in Trauma.

27.     Despite this sentiment, Plaintiff was determined to perform well and secure a lengthy employment with the Defendant.

28.     Plaintiff was trained, successfully completed all required competencies, and received a positive annual performance evaluation reflecting that he met or exceeded expectations.

29.     Plaintiff frequently interacted with resident physicians, including Dr. Taylor Fluoro (Caucasian male), and Dr. Hafman (Pakistani male with lighter complexion).

30.     During his employment, Plaintiff was marginalized and disrespected by the resident doctors and his superiors, who routinely ignored Plaintiff's clinical calls, delayed issuing medical orders, or dismissed his concerns in situations involving critical and time-sensitive patient care.

31.     Plaintiff remained professional at all times. Nevertheless, he was treated differently than his non-Black colleagues. Similarly situated non-Black nurses who raised identical patient-care concerns were not ignored, accused of wrongdoing, or subjected to scrutiny.

32.     Plaintiff continued to advocate for patient care, and although it felt as if Defendant did not appreciate his efforts, patients often expressed their gratitude. For example, on or about March 24, 2024, Defendant received a letter from a patient Plaintiff was assigned to which stated that the "professionalism, knowledge, concern and knowledge" provided by Plaintiff was "outstanding", "a credit to the profession", and "an asset to the Delray Medical Center". The patient further stated that he and his wife were "extremely grateful" to Plaintiff.

33.     In June–July 2024, Plaintiff complained to Nurse Manager Lundgren, of the Trauma ICU, regarding disparate treatment by resident physicians and their repeated failure to timely respond to patient emergencies, including situations involving critically ill trauma patients requiring immediate medical intervention.

34.      At all relevant times, Nurse Manager Lundgren exercised authority over staffing, scheduling, investigations, discipline, and termination.

35.     On multiple occasions, Plaintiff raised concerns to management about the way resident doctors subjected him to disparate treatment by disregarding his patient care requests and how his efforts to advocate for patient safety were undermined.

36.     Following the June–July 2024 complaint and continuing throughout the remainder of 2024, Plaintiff continued to observe persistent patient-care deficiencies, including delayed or ignored physician responses during critical and time-sensitive situations.

37.     Plaintiff repeatedly raised these concerns through appropriate supervisory and escalation channels in accordance with hospital policy.

38.     Plaintiff's non-Black colleagues were treated more favorably in similar circumstances, and he continued to overhear remarks that it was "unusual" for Black nurses to work in the Trauma ICU.

39.     In January 2025, Plaintiff again complained to Nurse Manager Lundgren regarding the same ongoing disparate treatment and patient-safety concerns, expressly noting that his prior complaints had been ignored and that the unsafe practices had not been corrected.

40.     Despite Plaintiff's continued advocacy for patient safety and multiple complaints over an extended period, Defendants failed to investigate, intervene, or take any meaningful corrective action. Instead, Defendants permitted the unsafe practices and disparate treatment to continue unabated.

41.     In or around September 2024, Plaintiff was involved in a serious motor vehicle accident that resulted in spinal injuries, ongoing physical limitations, and the need for medical treatment and physical therapy.

42.     Plaintiff's injuries constituted a serious health condition within the meaning of the Family and Medical Leave Act ("FMLA"), as they limited his ability to perform the essential functions of his job without medical care and recovery time.

43.     Following his car accident, Plaintiff's injuries caused him to be incapacitated at times.

44.     Plaintiff informed his supervisors and management of his injuries, physical limitations, and need for time off to recover. Plaintiff communicated openly and in good faith regarding his medical condition and work limitations.

45.     In or around January 2025, Defendant was notified of Plaintiff's physician order that he be granted FMLA leave for intermittent incapacity from January 8, 2025 through May 30, 2025.

46.     Plaintiff provided Defendant with sufficient information to reasonably determine that his need for leave may be covered by the FMLA, thereby placing Defendant on actual and constructive notice of Plaintiff's potential entitlement to FMLA-protected leave.

47.     Nevertheless, Defendant continued to deny Plaintiff's requests for FMLA leave.

48.     On March 15–16, 2025, Plaintiff was assigned to a trauma patient experiencing dangerously elevated blood pressure. Despite repeated attempts, Dr. Fluoro failed to timely respond or issue necessary medical orders.

49.     Plaintiff escalated his concerns to Charge Nurse and Assistant Nurse Manager for the Trauma ICU Mary Joyce Philip ("Philip"), a Filipino female, and,

pursuant to hospital policy, submitted a formal Safety Event Report documenting the delayed physician response and resulting risk to patient safety.

50.     Philip exercised direct supervisory authority over Plaintiff during shifts and participated in escalation and reporting decisions.

51.     During or around the time that Plaintiff submitted the Safety Event Report, he specifically complained that he was treated differently because he is Black.

52.     Within hours of Plaintiff submitting the Safety Event Report, Defendants removed Plaintiff from the work schedule and initiated an investigation, despite Plaintiff having no prior disciplinary history.

53.     Similarly situated non-Black nurses who submitted Safety Event Reports were not removed from the schedule, investigated, or deemed to have resigned.

54.     On March 27, 2025, Plaintiff reported to Human Resources solely to obtain employer verification required for licensure renewal. Instead, the Human Resources Manager for Tenet, Lauren (Last Name Unknown) ("Lauren") confronted Plaintiff, yelled at him in front of staff, stood in his personal space, and attempted to provoke an emotional reaction.

55.     Plaintiff remained calm and cooperative.

56.     At all relevant times, Lauren, a White American female, was a Human Resources representative who exercised authority over Plaintiff's employment, participated in the investigation and adverse employment actions taken against him, and was aware of Plaintiff's protected activity and medical condition.

57.     On or about April 15, 2025, Defendant falsely classified Plaintiff's employment status as a "voluntary resignation," despite Plaintiff never resigning and repeatedly seeking reinstatement.

58.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff lost wages, benefits, including a promised retention bonus totaling $20,000.00, structured as $5,000.00 disbursements every six (6) months, accrued paid time off, tuition reimbursement, and suffered severe emotional distress, humiliation, and damage to his professional and personal reputation.

59.     Plaintiff was scheduled to receive the second $5,000.00 disbursement in or about March 2025. Prior to that date, Plaintiff contacted Human Resources and spoke with an HR receptionist named Sabrina to confirm the timing and status of the second retention payment, which Plaintiff understood to be reflected in his employment documentation. Defendant failed to issue the second retention payment.

60.     In addition, Defendant submitted false and misleading documents in connection with Plaintiff's employment and the investigation into his conduct, including documents bearing Plaintiff's printed name purporting to reflect his signature, despite Plaintiff never signing such documents. Defendants also submitted inaccurate work schedules falsely indicating that Plaintiff worked day shifts, despite Plaintiff consistently working night shifts, and falsely indicating that Plaintiff was present at work on days when he was not scheduled.

61.     Defendant's allegations regarding Plaintiff's performance were contradicted by Plaintiff's own employment records, including his 2024 annual performance evaluation, which reflected that Plaintiff's performance was satisfactory and free of any negative findings or disciplinary issues.

62.     At all relevant times, Defendants acted through their officers, supervisors, managers, and Human Resources personnel, each of whom exercised authority over

Plaintiff's employment. Plaintiff is presently unaware of the full extent to which individual actors personally participated in, directed, approved, or ratified the discriminatory and retaliatory actions alleged herein. Plaintiff reserves the right to amend this Complaint to name individual defendants once discovery reveals the identities of those who exercised decision-making authority or knowingly participated in the unlawful conduct.

63.     All conditions precedent to the filing of this action have been satisfied, waived, or excused.

64.     Plaintiff has retained the undersigned counsel to protect his rights and interests and has become obligated to pay a reasonable attorneys' fee.

**COUNT I – RACE, COLOR, NATIONAL ORIGIN DISCRIMINATION**
**(DISPARATE TREATMENT) (42 U.S.C. § 1981)**

65.     The Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 through 64 of this Complaint.

66.     The Plaintiff is a member of a protected class of Black and Haitian citizens.

67.     At all times relevant, the Plaintiff was in a contractual relationship with Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center within the meaning of 42 U.S.C. § 1981, as amended.

68.     During the course of the Plaintiff's employment with Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center, Defendant violated the Plaintiff's rights by depriving him of his right to the enjoyment of all benefits, privileges, terms and conditions of his employment contract as is enjoyed by Caucasian or non-Black citizens of Haitian descent, in violation of 42 U.S.C.A. § 1981(b), as amended.

69.     During the course of the Plaintiff's employment with Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center, the Plaintiff has not enjoyed the same benefits,

privileges, terms and conditions of employment, as have Caucasian or non-Black employees of Haitian descent of the Defendants.

70.     Defendants discriminated against Plaintiff because of his race, color, and Haitian national origin by subjecting him to disparate treatment, removal from the schedule, and termination.

71.     Plaintiff was treated less favorably than similarly situated non-Black nurses and resident physicians who were not disciplined for similar conduct.

72.     The Defendants' treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraphs 20 through 64 of this Complaint, denied the Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by Caucasian or non-Black citizens, in violation of 42 U.S.C.A. § 1981, as amended.

73.     The Defendants' treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraphs 20 through 64, denied the Plaintiff the right to make and enforce contracts as enjoyed by Caucasian or non-Black citizens, in violation of 42 U.S.C.A. § 1981, as amended.

74.     Through their actions and treatment of the Plaintiff, the Defendants intended to discriminate against the Plaintiff on the basis of the Plaintiff's race and ancestry.

75.     During the course of the Plaintiff's employment with Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center, the Plaintiff has been subjected to a discriminatory, hostile and offensive work environment because of his race, as more fully described in paragraphs 20 through 64 of this Complaint.

76.     Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center, at all relevant times, had knowledge of the discriminatory acts and conduct described herein.

77.     Despite Defendant's knowledge of the ongoing discrimination, Defendant failed to take prompt or effective remedial action.

78.     Defendant knowingly and willfully violated the law. Defendant acted with malice and with reckless indifference to the Plaintiff's rights and emotional and physical well-being.

79.     As a direct and proximate result of the foregoing, the Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

80.     The Plaintiff has suffered damages of an on-going and continuous nature.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a.  Enter judgment in the Plaintiff's favor and against the Defendants for their violations of 42 U.S.C.A. § 1981, as amended;

b.  Award the Plaintiff actual damages suffered;

c.  Award the Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress the Plaintiff has suffered;

d.  Award the Plaintiff prejudgment interest on his damages award;

e.  Award the Plaintiff punitive damages;

f.  Enjoin the Defendants, their officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against the Plaintiff and any employee;

g.  Award the Plaintiff reasonable costs and attorneys' fees; and

h.  Grant the Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT II – RACE, COLOR, NATIONAL ORIGIN DISCRIMINATION (RETALIATION) (42 U.S.C. § 1981)

81.    The Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 through 64 of this Complaint.

82.    The Plaintiff is a member of a protected class of Black and Haitian citizens.

83.    At all times relevant, the Plaintiff was in a contractual relationship with Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center within the meaning of 42 U.S.C.A. ¬ß 1981, as amended.

84.    During the course of the Plaintiff's employment with Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center, the Defendants have violated Plaintiff's rights by depriving him of his right to the enjoyment of all benefits, privileges, terms and conditions of his employment contract as is enjoyed by Caucasian or non-Black citizens, in violation of 42 U.S.C.A. ¬ß 1981(b), as amended.

85.    During the course of the Plaintiff's employment with Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center, the Plaintiff has not enjoyed the same benefits, privileges, terms and conditions of employment, as have Caucasian or non-Black employees of the Defendants.

86.    Plaintiff engaged in protected activity by opposing race discrimination and reporting patient safety violations.

87.    Defendants retaliated against Plaintiff by removing him from the work schedule, intimidating him, and terminating his employment.

88.    The Defendants' treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraphs 20 through 64 of this Complaint, denied the Plaintiff the full and equal benefits of all laws and proceedings for the security of

THE LAW OFFICES OF T. WALLS BLYE, PLLC (*WWW.LAWYEROFJUSTICE.COM*)

persons and property as is enjoyed by Caucasian or non-Black citizens, in violation of 42 U.S.C.A. ¬ß 1981, as amended.

89.    The Defendants' treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraphs 20 through 64, denied the Plaintiff the right to make and enforce contracts as enjoyed by Caucasian or non-Black citizens, in violation of 42 U.S.C.A. ¬ß 1981, as amended.

90.    Through their actions and treatment of the Plaintiff, the Defendants intended to discriminate and retaliate against the Plaintiff on the basis of the Plaintiff's race and ancestry.

91.    Despite Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center's knowledge of the ongoing discrimination and protected activity, it failed to take remedial action.

92.    Plaintiff complained about race discrimination.

93.    In response, the Defendant terminated Plaintiff's employment.

94.    Defendant knowingly and willfully violated the law. Defendant acted with malice and with reckless indifference to the Plaintiff's rights and emotional and physical well-being.

95.    As a direct and proximate result of the foregoing, the Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

96.    The Plaintiff has suffered damages of an on-going and continuous nature.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

    a.   Enter judgment in the Plaintiff's favor and against the Defendants for their violations of 42 U.S.C.A. § 1981, as amended;

    b.   Award the Plaintiff actual damages suffered;

    c.   Award the Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress the Plaintiff has suffered;

    d.   Award the Plaintiff prejudgment interest on his damages award;

    e.   Award Plaintiff punitive damages;

    f.   Enjoin the Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against the Plaintiff and any employee;

    g.   Award the Plaintiff reasonable costs and attorneys' fees; and

    h.   Grant the Plaintiff such other and further relief as this Court deems equitable and just.

### COUNT III – RACE, COLOR, NATIONAL ORIGIN  DISCRIMINATION (HOSTILE WORK ENVIRONMENT) (42 U.S.C. § 1981)

97.    The Plaintiff adopts and incorporates by reference the allegations in paragraphs 1 through 64 of this Complaint.

98.    The Plaintiff is a member of a protected class of Black and Haitian citizens.

99.    At all times relevant, the Plaintiff was in a contractual relationship with Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center within the meaning of 42 U.S.C.A. § 1981, as amended.

100.    During the course of the Plaintiff's employment with Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center, the Defendants have violated the Plaintiff's rights by depriving him of his right to the enjoyment of all benefits, privileges, terms and conditions of his employment contract as is enjoyed by Caucasian or non-Black citizens, in violation of 42 U.S.C.A. § 1981(b), as amended.

101.    During the course of the Plaintiff's employment with Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center, the Plaintiff has not enjoyed the same benefits, privileges, terms and conditions of employment, as have Caucasian or non-Black employees of the Defendants.

102.   Defendants discriminated against Plaintiff because of his race, color, and Haitian national origin by subjecting him to disparate treatment, removal from the schedule, and termination.

103.   Plaintiff was treated less favorably than similarly situated non-Black nurses and resident physicians who were not disciplined for similar conduct.

104.   Defendant's supervisory employees and agents personally participated in and ratified the discriminatory conduct.

105.   The Defendants' treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraphs 20 through 64 of this Complaint, denied the Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by Caucasian or non-Black citizens, in violation of 42 U.S.C.A. § 1981, as amended.

106.   The Defendants' treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraphs 20 through 64, denied the Plaintiff the right to make and enforce contracts as enjoyed by Caucasian or non-Black citizens, in violation of 42 U.S.C.A. § 1981, as amended.

107.   Through their actions and treatment of the Plaintiff, the Defendants intended to discriminate against the Plaintiff on the basis of the Plaintiff's race and ancestry.

108.   During the course of the Plaintiff's employment with Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center, the Plaintiff has been subjected to a discriminatory, hostile, and offensive work environment because of his race, as more fully described in paragraphs 20 through 64 of this Complaint.

109.   Plaintiff was subjected to severe and pervasive harassment based on race, color, and national origin that altered the terms and conditions of employment.

THE LAW OFFICES OF T. WALLS BLYE, PLLC (*WWW.LAWYEROFJUSTICE.COM*)

110.     Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center, at all times, had knowledge of the discriminatory acts and conduct of its supervisory employees and agents and of all other discriminatory actions described in paragraphs 20 through 64 above.

111.     Despite Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center's knowledge of the ongoing discrimination, it failed to take remedial action.

112.     Defendant knowingly and willfully violated the law. Defendant acted with malice and with reckless indifference to the Plaintiff's rights and emotional and physical well-being.

113.     As a direct and proximate result of the foregoing, the Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

114.     The Plaintiff has suffered damages of an on-going and continuous nature.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a.   Enter judgment in the Plaintiff's favor and against the Defendants for their violations of 42 U.S.C.A. § 1981, as amended;

b.   Award the Plaintiff actual damages suffered;

c.   Award the Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress the Plaintiff has suffered;

d.   Award the Plaintiff prejudgment interest on his damages award;

e.   Award the Plaintiff punitive damages;

f.   Enjoin the Defendants, their officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against the Plaintiff and any employee;

g.   Award the Plaintiff reasonable costs and attorneys' fees; and

h.   Grant the Plaintiff such other and further relief as this Court deems equitable and just.

THE LAW OFFICES OF T. WALLS BLYE, PLLC (*WWW.LAWYEROFJUSTICE.COM*)

## COUNT IV: INTERFERENCE
## (TERMINATION) – FMLA

115.   The Plaintiff repeats and re-alleges paragraphs 1 through 64 as if fully stated herein.

116.   Plaintiff was entitled to FMLA leave due to a serious health condition, including injuries sustained in a motor vehicle accident that resulted in spinal injury, physical limitations, and the need for ongoing medical treatment and physical therapy.

117.   Plaintiff provided Defendant with sufficient notice of his qualifying condition by informing his supervisor of his injuries, physical limitations, and need for time off to recover.

118.   The Plaintiff provided enough information for the Defendant to know that his potential leave may be covered by the FMLA.

119.   The Defendant was aware of the Plaintiff's qualifying reason.

120.   At all times material hereto, the Plaintiff communicated with the Defendant regarding his medical condition.

121.   Despite its knowledge of the Plaintiff's medical condition and Plaintiff's eligibility status and rights under the FMLA and instead of affording Plaintiff the protections guaranteed by the FMLA, Defendant removed Plaintiff from the schedule and falsely deemed his employment a "voluntary resignation," effectively terminating his employment.

122.   By terminating Plaintiff while he was entitled to FMLA-protected leave and without restoring him to his position or an equivalent position, Defendant interfered with Plaintiff's substantive rights under the FMLA.

123.   Defendant's termination of Plaintiff while he was entitled to FMLA-protected leave, was willful and undertaken with reckless disregard for Plaintiff's rights under the FMLA.

124.   As a direct and proximate result, Plaintiff suffered lost wages, loss of benefits, and other damages.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a.  Enter judgment in the Plaintiff's favor and against the Defendant for its violations of the FMLA;

b.  Award the Plaintiff actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity;

c.  Award the Plaintiff liquidated damages based on Defendant's conduct;

d.  Award the Plaintiff prejudgment interest on his damages award;

e.  Award the Plaintiff reasonable costs and attorneys' fees;

f.  Award the Plaintiff any further relief pursuant to the FMLA; and,

g.  Grant the Plaintiff such other and further relief as this Court deems equitable and just.

## COUNT V: RETALIATION
### FMLA

125.    The Plaintiff repeats and re-alleges paragraphs 1 through 64 as if fully stated herein.

126.    Plaintiff was entitled to FMLA leave due to a serious health condition, including injuries sustained in a motor vehicle accident that resulted in spinal injury, physical limitations, and the need for ongoing medical treatment and physical therapy.

127.    Plaintiff provided Defendant with sufficient notice of his qualifying condition by informing his supervisor of his injuries, physical limitations, and need for time off to recover.

128.    The Plaintiff provided enough information for the Defendant to know that his potential leave may be covered by the FMLA.

129.    The Defendant was aware of the Plaintiff's qualifying reason.

130.    At all times material hereto, the Plaintiff communicated with the Defendant regarding his medical condition.

THE LAW OFFICES OF T. WALLS BLYE, PLLC (*WWW.LAWYEROFJUSTICE.COM*)

131.   Despite its knowledge of the Plaintiff's medical condition and Plaintiff's eligibility status and rights under the FMLA and instead of affording Plaintiff the protections guaranteed by the FMLA, Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center removed Plaintiff from the schedule and terminated the Plaintiff for no cause.

132.   Plaintiff engaged in protected activity by requesting and taking leave related to a serious health condition and by communicating with Defendant regarding his medical limitations.

133.   Defendant was aware of Plaintiff's protected activity.

134.   Following Plaintiff's exercise of FMLA-protected rights, Defendant subjected him to adverse employment actions, including heightened scrutiny, removal from the schedule, refusal to reinstate him, and termination.

135.   The Defendant terminated the Plaintiff following her requesting and taking of FMLA leave.

136.   Plaintiff's protected activity under the FMLA was a motivating and proximate cause of Defendant's adverse actions.

137.   Defendant's conduct constitutes unlawful retaliation in violation of the FMLA.

138.   The Defendants have intentionally engaged in unlawful employment practices in violation of the FMLA, by retaliating against the Plaintiff for having taken leave under the FMLA.

139.   The effect of the practice complained of above has been to deprive the Plaintiff of equal employment opportunities and, in fact, his/her employment, because of such complaint.

140.   As a direct and proximate result of the intentional violations by the Defendant of the Plaintiff's rights under the FMLA, by retaliating against him/her by terminating his/her

employment for having taken FMLA medical leave, the Plaintiff has been damaged in that the Plaintiff lost, inter alia, wages, other compensation, and benefits, including health insurance.

141.    Defendant's adverse employment actions against Plaintiff following his disclosure of a qualifying medical condition and need for leave were willful, intentional, and taken in reckless disregard of Plaintiff's rights under the FMLA.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

    a.  Enter judgment in the Plaintiff's favor and against the Defendant for its violations of the FMLA;

    b.  Award the Plaintiff actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity;

    c.  Award the Plaintiff liquidated damages based on the Defendant's conduct;

    d.  Award the Plaintiff prejudgment interest on his/her damages award;

    e.  Award the Plaintiff reasonable costs and attorneys' fees;

    f.  Award the Plaintiff any further relief pursuant to the FMLA; and,

    g.  Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT VI – RETALIATION - FLORIDA WHISTLEBLOWER ACT**
**(Fla. Stat. § 448.102(3))**

142.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 64 above as if fully set forth herein.

143.    The Florida Whistleblower Act provides, in relevant part, that an employer may not take retaliatory personnel action against an employee because the employee has objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation. Fla. Stat. § 448.102(3).

144.   Plaintiff objected to and refused to acquiesce in unsafe and unlawful patient-care practices, including resident physicians' repeated failure to timely respond to patient emergencies, delayed or ignored medical orders, and conduct that violated patient-safety standards, hospital policies, and applicable healthcare regulations.

145.   Plaintiff disclosed and objected to these unlawful practices by, among other things, reporting patient-safety concerns to management, escalating issues through supervisory channels, and submitting a formal Safety Event Report, all of which constituted protected whistleblower activity under Fla. Stat. § 448.102(3).

146.   The unsafe patient-care practices to which Plaintiff objected constitute violations of Florida law, applicable healthcare regulations, and patient-safety standards, including but not limited to laws and regulations governing hospital operations, patient safety, and standards of care.

147.   Defendants retaliated against Plaintiff for engaging in protected whistleblower activity by removing him from the work schedule, subjecting him to an investigation, falsely characterizing his employment as a "voluntary resignation," and ultimately terminating his employment.

148.   Defendants terminated Plaintiff because he objected to and refused to remain silent about unlawful and unsafe patient-care practices, and because he continued to advocate for patient safety and compliance with the law.

149.   Defendants' actions constitute unlawful retaliation and a wrongful personnel action in violation of the Florida Whistleblower Act, Fla. Stat. § 448.102(3).

150.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages, including but not limited to lost wages, lost benefits, emotional distress, humiliation, and damage to his professional reputation.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a.   Reinstate the Plaintiff to the same position held before the Defendant's retaliatory action against the Plaintiff, or to an equivalent position;

b.   Reinstate the Plaintiff's full fringe benefits and seniority rights;

c.   Award compensation for lost wages, benefits, mental damages, and other remuneration;

d.   Order payment by the Defendant of the Plaintiff's reasonable costs and attorney's fees of this action pursuant to Section 448.104, Florida Statutes;

e.   Issue an order prohibiting the Defendant from discharging individuals who refuse to engage in or object to practices which violate Florida law; and

f.   Order such further relief as the Court deems just and proper.

### COUNT VII: UNPAID WAGES (BREACH OF CONTRACT)
### (Fla. Stat. § 448.08)

151.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 64 above as if fully set forth herein.

152.     At all times material hereto, Plaintiff was employed by Defendant Tenet Healthcare Corporation d/b/a Delray Medical Center ("Defendant").

153.     Plaintiff was employed by Defendant as a Registered Nurse in the Trauma Intensive Care Unit from approximately March 2023 through April 2025.

154.     During Plaintiff's employment, Plaintiff and Defendant entered into a verbal and/or written agreement pursuant to which Defendant agreed to pay Plaintiff a non-discretionary retention bonus totaling $20,000.00, structured as $5,000.00

disbursements every six (6) months, in exchange for Plaintiff's continued employment and satisfactory performance.

155.   The retention bonus constituted earned compensation and wages under Florida law and was not discretionary.

156.   Plaintiff fully performed his obligations under the agreement and satisfied all conditions required to earn the retention bonus, including continued employment and satisfactory job performance.

157.   Plaintiff received the initial $5,000.00 disbursement and was scheduled to receive the second $5,000.00 disbursement in or about March 2025.

158.   Prior to the scheduled payout, Plaintiff contacted Defendant's Human Resources department to confirm the timing and status of the retention payment, and Plaintiff was informed that the bonus was reflected in his employment documentation.

159.   Defendant thereafter failed and refused to issue the earned March 2025 retention bonus payment, despite Plaintiff having already earned the same.

160.   Defendant removed Plaintiff from the work schedule, falsely characterized his employment as a "voluntary resignation," and terminated Plaintiff after the bonus was earned and prior to payout, in order to avoid payment of earned wages.

161.   Defendant's failure to pay Plaintiff the earned retention bonus constitutes a breach of contract and unlawful withholding of wages.

162.   As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages, including unpaid wages in the amount of at least $5,000.00, plus interest.

163.   Pursuant to Fla. Stat. § 448.08, Plaintiff is entitled to recover reasonable attorneys' fees and costs incurred in bringing this action.

THE LAW OFFICES OF T. WALLS BLYE, PLLC (*WWW.LAWYEROFJUSTICE.COM*)

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

    a.  Award the Plaintiff unpaid wages found to be due and owing;

    b.  Award the Plaintiff prejudgment interest;

    c.  Award the Plaintiff reasonable attorney's fee and costs pursuant to Fla. Stat. § 448.08; and

    d.  Order such other relief as this Court deems just and equitable.

## <u>JURY TRIAL DEMAND</u>

The Plaintiff demands trial by jury of all issues so triable as of right.

**Dated: January 23, 2026.**

                  **Respectfully submitted,**

                  **By:   /s/ Tanesha Walls Blye, Esq.**
                  Tanesha Walls Blye, Esquire
                  Lawyer of Justice
                  Fla. Bar No.: 0738158
                  Email: attorneyblye@lawyerofjustice.com
                  **THE LAW OFFICE OF T. WALLS BLYE, PLLC**
                  15800 Pines Blvd, Suite 321, Pembroke Pines, FL 33027
                  66 West Flagler Street, Ste. 9568, Miami, Florida 33130
                  Office Line: 786.796.1814
                  Legal Assistant: 305.482.1209
                  Email: attorneyblye@lawyerofjustice.com
                  Website: www.lawyerofjustice.com

                  ***Counsel for Plaintiff***